279 F.2d 709
 ATLANTIC CONSTRUCTION COMPANY, a Corporation, and United States Fidelity and Guaranty Company, Appellants,
v.
UNITED STATES of America for the Use and Benefit of J. L. WEBB, d/b/a J. L. Webb Company, Appellee.
ATLANTIC CONSTRUCTION COMPANY, a Corporation, Appellant,
v.
J. L. WEBB, d/b/a J. L. Webb Company, Individually, Appellee.
 No. 14002.
 United States Court of Appeals Sixth Circuit.
 June 13, 1960.
 
 Charles L. Neely and Robert L. Green, Memphis, Tenn., for appellants.
 Herman H. Ross and T. Eugene Burts Florence, Ala., for appellees.
 Before MILLER and WEICK, Circuit Judges, and HOLLAND, Senior District Judge.
 PER CURIAM.
 
 
 1
 The General Services Administration (G. S. A.) of the United States Government awarded to the appellant, Atlantic Construction Company, hereinafter called Atlantic, on April 19, 1957, a contract to perform certain painting work at the U. S. Public Service Hospital at Memphis, Tennessee, upon the basis of its bid of $19,445. In conjunction with the contract, Atlantic procured from the United States Fidelity & Guaranty Company a bond in the amount of $9,723, which guaranteed payment of labor and materials used on the job. The work on the hospital was to be done according to G. S. A. plans, specifications, and regulations, which were furnished to Atlantic.
 
 
 2
 Shortly after the execution of this contract, Atlantic attempted to procure a subcontractor to do the actual painting on the hospital job. At least eight bids to do the work were received from painting contractors in Memphis, all of which bids were in excess of the sum of $19,445 initially bid by Atlantic for the prime contract. The highest of these bids ran something over $29,000. None of these bids was accepted. Thereafter, a representative of Atlantic contacted the appellee J. L. Webb in Sheffield. Alabama, a contractor who had had no previous experience with painting contracts, but who, nevertheless, entered into a contract with Atlantic on May 30, 1957, to do the painting for $15,000.
 
 
 3
 After the work on the job was under way Atlantic learned that it would be necessary for it to actually perform at least 12% of the work under the contract in order to comply with G. S. A. regulations, and set about to arrange with Webb some way which would permit it to complete 12% of the job. A representative of Atlantic arranged a meeting with Webb in Atlanta, Georgia, on August 23, 1957, at which time a supplemental written agreement was entered into between the parties, reading as follows:
 
 
 4
 "As of this day of August 23, 1957, the J. L. Webb Company of Sheffield, Alabama agrees to turn over to Atlantic Construction Company the completion of the work on the U. S. Public Service Hospital Project No. CR 4-1572 and guarantees that there is more than 12% of the work remaining to be completed but that there is sufficient material and equipment on hand for completion and that all that will be required is ($2,000.00) two thousand dollars for Payrolls and incidental Job Costs for completion.
 
 
 5
 "The J. L. Webb Company further agrees that should the completion of the job cost over ($2,000.00) two thousand dollars, that that amount would be deducted from the original contract price of $15,000 on the above Project.
 
 
 6
 "The purpose of this agreement is to enable the Atlantic Construction Company to comply with their original agreement with G. S. A. and does not release the J. L. Webb Company from performance required under the contract between the J. L. Webb Company and Atlantic Construction Co. dated May 30, 1957.
 
 
 7
 "The J. L. Webb Company certifies that all labor is paid to date and will make payment of any claims for labor or material arising prior to August 23rd 1957 or it may be deducted by Atlantic Construction Company from balance due from contract dated May 30, 1957.
 
 
 8
 "The Atlantic Construction Company agrees to pay the J. L. Webb Company the balance due them after all funds have been received from General Services Administration."
 
 
 9
 Webb turned over to Atlantic the remainder of the work under the contract, leaving, in accordance with the supplemental agreement, at least 12% of the work to be completed by Atlantic in order that it could comply with its contract with G. S. A. Atlantic completed the job. At the time of this action Atlantic had received from G. S. A. partial payment in the amount of $11,375.32 on the prime contract. There remained a balance of $8,069.68 to be paid by G. S. A. Although Webb was informed that he would receive progress payments as the work progressed, only one such payment of $1,500 was made to him by Atlantic. Atlantic also paid approximately $1,841 for paint after it took over the last portion of the job, to which it was entitled to credit. Webb also made a small advancement to one of Atlantic's representatives for expenses. Disregarding for the moment Atlantic's defense to the claim, there was, at the time this action was filed, an unpaid balance owing to Webb by Atlantic of $11,778.77, which Atlantic refused to pay.
 
 
 10
 The appellee Webb brought this action, first against Atlantic and the Guaranty Company under the provisions of Section 270b, Title 40 U.S.C.A. commonly referred to as the Miller Act, and, secondly, as an action for himself doing business as J. L. Webb Company against Atlantic to rescind the $15,000 contract because of fraud in its inducement and to recover $23,798.30 on the quantum meruit basis for labor and materials furnished by the Webb Company. The District Judge, however, found that the proof wholly failed to sustain the allegations of fraud and treated the action as one involving a breach of contract as a result of Atlantic's failure and refusal to pay the consideration agreed upon between the parties. We concur in this ruling.
 
 
 11
 The case was tried to the Court without a jury. The District Judge made Findings of Facts as hereinabove set out and entered Conclusions of Law, No. III of which is as follows:
 
 
 12
 "Plaintiff has established by a preponderance of the evidence that he performed all of the things required of him under the contract and supplemental agreement herein and that he has not received full payment in accordance therewith. The failure of the defendant to compensate the plaintiff has resulted in a breach of the contract by the defendant."
 
 
 13
 Conclusion of Law No. IV was that Webb was entitled to recover from the defendants the amount of $11,778.77, and judgment was entered to that effect, with the liability of the Guaranty Company, however, being limited to $9,723, the amount of its bond. This appeal followed.
 
 
 14
 Under the view which we take of the case, we do not pass upon the Guaranty Company's contention that, as no furnisher of material or labor filed this action, it incurred no liability under the Miller Act.
 
 
 15
 Appellants' main contention is that the District Judge either misconstrued or ignored the supplemental contract of August 23, 1957, and the uncontroverted evidence on behalf of appellants that when Atlantic took over the remainder of the work at the hospital the work which remained to be performed was much greater than 12% of the work included in the contract and, in fact, required the expenditure of $11,149.25 by Atlantic before final inspection and approval of the work was made by G. S. A. in February, 1958.
 
 
 16
 The Findings of Fact recognize the execution of this supplemental agreement, but they contain no finding with respect to what percentage of the work under the original contract was performed by Atlantic under it, or to what extent, if any, the cost of performing this remaining work exceeded $2,000. If the supplemental agreement was a valid one, Findings of Fact on this aspect of the case are material for consideration of a proper judgment.
 
 
 17
 The Conclusions of Law make no reference to the validity or invalidity of the supplemental agreement of August 23, 1957. If valid, they do not state the construction given to it by the District Judge, which would make it inapplicable to the facts of this case. In this connection, the Court takes note that under the supplemental agreement, Atlantic agreed to pay the appellee the balance due "after all funds have been received from General Services Administration," and that under the Findings of Fact of the District Judge there was at the time of the filing of this action an unpaid balance of $8,069.68 still owing by G. S. A. to Atlantic. Under the provision of the contract referred to, this could be construed as making the filing of the present action premature.
 
 
 18
 If the District Judge considered the supplemental agreement an invalid one, there should be a definite ruling to that effect, together with Findings of Fact upon which such a ruling is based, and a statement of the reasons of the District Judge therefor, sufficient to enable this Court to satisfactorily review such ruling.
 
 
 19
 The judgment of the District Court is vacated and the case remanded to the District Court for further proceedings, including the taking of additional proof if desired by any of the parties, in accordance with the views expressed herein.